**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SIERRA CLUB, a not-for-profit corporation, and
DANIEL RAMETTA, as an individual and member
of SIERRA CLUB,

                       Plaintiff,

v.

UNITED STATES ARMY CORPS OF
ENGINEERS, TODD T. SEMONITE, Commander
and Chief of Engineers of the U.S. Army Corps. of
Engineers, in his official capacity; and COLONEL
ANDREW KELLY, Commander and District
Engineer of the U.S. Army Corps of Engineers,
Jacksonville District, in his official capacity,
                       Defendants'

and

PASCO COUNTY BOARD OF COUNTY
COMMISSIONERS,

                       Intervenor/Defendant.

Case No.: 8:20-cv-287-T-36JSS

**INTERVENOR/DEFENDANT'S, PASCO COUNTY BOARD OF COUNTY
COMMISSIONERS', RESPONSE TO PLAINTIFFS' EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION,
SUPPORTING MEMORANDUM OF LAW, AND REQUEST FOR HEARING**

# TABLE OF CONTENTS

BACKGROUND .................................................................................................. 1

STATUTORY BACKGROUND ......................................................................... 2

STANDARD OF REVIEW ................................................................................ 4

FACTUAL BACKGROUND ............................................................................. 5

ARGUMENT ...................................................................................................... 6

   1.  Plaintiffs Fail to Demonstrate a Substantial Likelihood of Success on the Merits ............. 6

      a.  The Corp's Decision not to provide an EIS was not arbitrary and capricious ............... 7

      b.  The Corps adequately for public participation prior to issuance of the Permit ............ 9

   2.  Plaintiffs Fail to Demonstrate an Irreparable Injury in the Absence of the Requested Injunction .................................................................................... 11

   3.  Plaintiffs Fail to Demonstrate a Threatened Injury that Exceeds Any Injury to the Non-Moving Party Caused by the Injunction ............................................. 14

   4.  Public Policy Favors Denying Plaintiffs' Request for a Temporary Restraining Order ....15

   5.  Plaintiffs should be Required to Post a Bond if a Temporary Restraining Order Issues ...15

CONCLUSION .................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs,* 297 F.R.D. 633 (N.D. Alabama, 2014) ...................................................................................................................... 19

*Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011)............................................................ 8

*Brodsky v. U.S. Nuclear Regulatory Comm'n*, 704 F.3d 113, 121 (2d Cir. 2013) ...................... 11

*C.A.R.E. Now, Inc. v. FAA*, 844 F.2d 1569, 1573 (11th Cir. 1988).............................................. 11

*Carillon Importers, Ltd. v. Frank Pesce Int'l Group, Ltd.*, 112 F.3d 1125, 1127 (11th Cir. 1997) .................................................................................................................................... 20

*Cheng Ke Chen v. Holder,* 783 F. Supp. 2d 1183, 1186 (N.D. Ala. 2011) ................................... 4

*City of Oxford v. FAA,* 428 F.3d 1346, 1353 (11th Cir. 2005) ...................................................... 2

*Coalition on Sensible Transp. Inc. v. Dole,* 826 F. 2d 60, 66-67 (D.C. Cir. 1987) ...................... 9

*D'Olive Bay Restoration & Pres. Comm., Inc.v. U.S. Army Corps of Eng'rs*, 513 F. Supp. 2d 1261, 1289 (S.D. Ala. 2007) ...................................................................................... 10

*Dep't of Transp. v. Pub. Citizen,* 541 U.S. 752, 124 S. Ct. 2204 (2004)...................................... 9

*Dimare Ruskin, Inc. v. Del Campo Fresh, Inc.,* No. 8:10-cv-1332-T-23AEP, 2010 WL 2465158, at *1 (M.D. Fla. June 15, 2010) ................................................................................ 5, 7

*Four Seasons Hotels And Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003) .................................................................................................................... 5, 7, 15

*Fund for Animals, Inc. v. Rice,* 85 F.3d 535, 545 (11th Cir. 1996) ........................................ 4, 12

*Hill v. Boy,* 144 F. 3d 1146, 1450 (11th Cir. 1998) ...................................................................... 9

*Marsh v. Or. Nat. Res. Council,* 490 U.S. 360, 376 (1989)........................................................... 3

*Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)................................................................................................... 14

*Palm Beach County Envtl. Coal. v. Florida*, 587 F. Supp. 2d 1254,1257 (S.D. Fla. 2008)......... 15

*Piambino v. Bailey,* 757 F.2d 1112, 1143 (11th Cir. 1985)........................................................ 20

*Rapanos v. United States*, 547 U.S. 715 (2006)........................................................................... 4

*Sampson v. Murray,* 415 U.S. 61 (1974) ...................................................................................... 4

*Sheets v. City of Punta Gorda, Florida,* 219CV484FTM38MRM, 2019 WL 6251361 (M.D. Fla. Nov. 23, 2019) ......................................................................................................... 8

*Sierra Club v. Van Antwerp*, 526 F.3d 1353,1362 (11th Cir. 2008)................................ 9

*Telestrata, LLC v. NetTALK.com, Inc.,* 126 F. Supp. 3d 1344, 1356 (S.D. Fla. 2015) ............... 20

*United States v. Metropolitan Dade County*, 815 F. Supp. 1475, 1477 (S.D. Fla. 1993)............. 7

*Vermont Yankee Nuclear Power Corp. v. NRDC*, 14 435 U.S. 519, 558 (1978) ........................ 10

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ..................................................... 17

**Statutes**

§ 336.02(1)(a), Fla. Stat. ............................................................................................................. 1

33 U.S.C. § 1362(7) ..................................................................................................................... 3

42 U.S.C. § 4332(2)(C) ............................................................................................................ 3, 7

**Rules**

M.D. Fla. L.R. 4.05 ............................................................................................................... 1, 4, 6

Rule 65, Fed. R. Civ. P. .................................................................................................. 1, 4, 15, 16

**Regulations**

33 C.F.R. Pt. 320................................................................................................................... 3

33 CFR § 328.3(a)(3)............................................................................................................. 3

33 CFR 327.4 ...................................................................................................................... 3, 9

40 C.F.R. § 1506.6................................................................................................................ 9

40 C.F.R. § 1508.13.............................................................................................................. 3

40 C.F.R. § 1508.9................................................................................................................ 2

40 C.F.R. §§ 1500.1-1508.28........................................................................................... 2, 9

40 C.F.R. §§ 1501.3-1501.4................................................................................................ 3

40 C.F.R. Pt. 230.................................................................................................................. 3

The Pasco County Board of County Commissioners ("Pasco"), pursuant to Rule 65, Fed. R. Civ. P., and M.D. Fla. L.R. 4.05, hereby responds to Plaintiffs' Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction, Supporting Memorandum of Law, and Request for Hearing ("Motion for TRO") and in support states:

## BACKGROUND

This case involves a challenge by Sierra Club ("Sierra") and Daniel Rametta ("Rametta") (collectively the "Plaintiffs") to federal agency action taken in connection with efforts to construct a roadway referred to as the Ridge Road Extension ("RRE") in Pasco County, Florida. Specifically, Plaintiffs challenge United States Army Corps of Engineers ("Corps") decision to issue Permit No.: SAJ-2011-00551 (SP-TSH) ("RRE Permit") under Section 404 of the Clean Water Act ("CWA") to Pasco and the Florida Department of Transportation, Florida's Turnpike Enterprise ("FDOT"). Pasco is the entity empowered to "[p]rovide and regulate . . . roads . . ." within Pasco County. § 125.01(m), Fla. Stat. Furthermore, Pasco is "invested with the general superintendence and control of the county roads … and may establish new roads …." § 336.02(1)(a), Fla. Stat. Pasco has been engaged in the planning and approval process for the RRE for decades.

On February 6, 2020, Plaintiffs, filed their Motion for TRO requesting the Court enter a temporary restraining order or preliminary injunction ("TRO/PI"). Plaintiffs seek to halt construction of the RRE during the pendency of this instant action, notwithstanding the thorough consideration given to the RRE by the Corps, abundant opportunities for public engagement, and robust Environmental Assessment, all of which demonstrated that the RRE Permit was issued in accordance with National Environmental Policy Act ("NEPA"), the Administrative Procedures Act ("APA"), and the Clean Water Act ("CWA"), section 404. This Court denied Plaintiff's request to grant an *ex parte* temporary restraining order in part on the grounds that Plaintiffs had

created their own emergency by inexplicably waiting until to file the motion until forty-eight days after the Permit was issued and twenty-four days after groundbreaking (Doc. 7, p. 5), and in part because Plaintiffs failed to establish a harm so immediate and irreparable that it could not wait until all parties could be heard on the matter.  (Doc. 7, p. 6-7).

Plaintiffs fail to demonstrate that they are likely to succeed on the merits, and do not show that the harms they fear are irreparable (or even preventable by the issuance of a TRO/PI). Plaintiffs also fail the carry their burden of proving that their alleged harms outweigh the significant public harm of an indeterminate delay in the construction of a needed emergency evacuation round and mobility improvements. For the reasons expressed herein, including, but not limited to, the extraordinary burden that must be met by Plaintiffs in their request (which burden Plaintiffs fail to meet), this Court should decline to issue the requested TRO/PI.

## STATUTORY BACKGROUND

NEPA is a procedural statute that requires federal agencies to inform themselves of the environmental effects of proposed federal actions, and consider reasonable alternatives, before taking action. *City of Oxford v. FAA,* 428 F.3d 1346, 1353 (11th Cir. 2005). NEPA accomplishes this not by imposing substantive requirements but by establishing a process to foster informed decision-making and public participation. *Id.* The Council on Environmental Quality ("CEQ"), an agency created by NEPA in the Executive Office of the President, has issued regulations to guide agencies' compliance. 40 C.F.R. §§ 1500.1-1508.28.

To comply with NEPA, agencies often prepare an Environmental Assessment ("EA"), a "concise" public document that "[b]riefly" discusses the environmental impacts of, and alternatives to, a proposal for federal action. 40 C.F.R. § 1508.9. Agencies may use the EA to determine whether the proposed action will "significantly affect" the quality of the human

environment . . . ." 42 U.S.C. § 4332(2)(C); 40 C.F.R. §§ 1501.3-1501.4. If the proposed action will have "significant" environmental impacts, NEPA instructs agencies to prepare an Environmental Impact Statement ("EIS"), a detailed environmental review document which analyzes the environmental impacts of the proposal, reasonable alternatives, and other factors. 42 U.S.C. § 4332(2)(C). If, however, the agency prepares an EA and concludes, as occurred in this instance,  that the proposed action is *not* likely to have significant impacts, the agency may issue a finding of no significant impact ("FONSI"), and the NEPA process is complete. 40 C.F.R. § 1508.13. A FONSI is a factual determination which "implicates substantial agency expertise" and is entitled to deference. *Marsh v. Or. Nat. Res. Council,* 490 U.S. 360, 376 (1989).

Under Section 404(a) of the CWA, the Corps is authorized to issue permits allowing the discharge of dredged or fill material into "navigable waters."  The CWA defines "navigable waters" as "the waters of the United States," 33 U.S.C. § 1362(7), and the Corps' regulations define such waters to include intrastate waters, "the use, degradation or destruction of which could affect interstate or foreign commerce," 33 CFR § 328.3(a)(3). The CWA applies to wetlands that are considered waters of the United States, including those at issue here; however, CWA does not grant jurisdiction to the Corps over uplands.  *See Rapanos v. United States*, 547 U.S. 715 (2006).

The Corps issues 404 permits, as was done here, pursuant to the requirements in the Corps' regulations, 33 C.F.R. Pt. 320, as well as the CWA Section 404(b)(1) Guidelines that were developed jointly by the Environmental Protection Agency and the Corps. 40 C.F.R. Pt. 230. Individual permits are issued on a case-by-case basis after notice and comment. The Corps also may, in its discretion grant a public hearing  *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 545 (11th Cir. 1996) (citing 33 CFR 327.4). In this case, the Corps followed all procedural requirements when issuing the Permit.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 65(b)(1) authorizes the court to issue a temporary restraining order. However, a temporary restraining order "is an extraordinary remedy to be granted only under exceptional circumstances." *Cheng Ke Chen v. Holder,* 783 F. Supp. 2d 1183, 1186 (N.D. Ala. 2011) (citing *Sampson v. Murray,* 415 U.S. 61 (1974)); *see also Four Seasons Hotels And Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003) ("[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to each of the four prerequisites").

To obtain a temporary restraining order, a movant must show: (1) a substantial likelihood of success on the merits; (2) an irreparable injury in the absence of the requested injunction; (3) a threatened injury that exceeds any injury to the non-moving party caused by the injunction; and (4) that public policy favors such an order. *Dimare Ruskin, Inc. v. Del Campo Fresh, Inc.,* No. 8:10-cv-1332-T-23AEP, 2010 WL 2465158, at *1 (M.D. Fla. June 15, 2010) (citing *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.,* 320 F.3d 1205, 1210 (11th Cir. 2003)); *see also* M.D. Fla. L.R. 4.05(b)(4) (requiring a party requesting a temporary restraining order to submit a brief or memorandum addressing these factors). For the reasons set forth herein, the Plaintiff cannot satisfy its burden and therefore its request for TRO/PI must be denied.

In addition, M.D. Fla. L.R. 4.05 (b)(3), requires that a motion for a temporary restraining order: (1) describe precisely the conduct sought to be enjoined; (2) set forth facts on which the Court can make a reasoned determination as to the amount of security which must be posted pursuant to Rule 65(c); (3) be accompanied by a proposed form of temporary restraining order prepared in strict accordance with the several requirements contained in Rule 65(b) and (d); and (4) be accompanied by a supporting legal memorandum or brief. *See* M.D. Fla. L.R. 4.05(b)(3).

Additionally, the Local Rules provide that a motion for temporary restraining order must demonstrate that the movant's anticipated injury "is so imminent that notice and a hearing on the application for preliminary injunction is impractical if not impossible." *Id.* at 4.05(b)(2). As this Court previously noted, Plaintiffs created their own emergency by inexplicably waiting to file the motion until forty-eight days after the Permit was issued and twenty-four days after groundbreaking. *See* Doc. 7, p. 5.

## **FACTUAL BACKGROUND**

The County adopts in total the Factual Background provided in the Federal Defendants' Response in Opposition to Plaintiffs' Motion for Temporary Restraining Order.  (Doc. 19, P. 4-6).  The County supplements the Factual Background as follows.

Planning for the construction of the RRE began as far back as 1989 when the Project Development and Environmental Study for the Suncoast Parkway included the now existing infrastructure for the RRE interchange with the Suncoast Parkway.  Compl., (Doc. 1-20, p. 51).  The Serenova Tract was purchased by FDOT as mitigation for the Suncoast Parkway but the construction and right of way for the RRE was contemplated and reserved. *Id.* at 52.  The ownership of the Serenova Tract was transferred to the Southwest Florida Water Management District (SWFWMD) in October of 2000 to manage the property and fulfill the mitigation requirements necessitated by the construction of the Suncoast Parkway. *Id.* at 54.  The County coordinated with SWFWMD regarding the planning construction of the RRE as evidenced by the Agreement between SWFWMD and the County and attached to Plaintiffs' Complaint as Exhibit B. (Doc. 1-2). The Suncoast Parkway permit approvals and associated conservation easement clearly did not preclude the construction of the RRE through the Serenova Tract. (Doc 1-20, p. 55) The first public notice by the Corps regarding the RRE was published on February 2, 2000 ("2000

Application"). (Doc. 1-20, p. 11).  The 2000 Application included 69.31-acres of wetland impact but was ultimately withdrawn in November 2010. (Doc. 1-20, p.11-12)  On May 31, 2011 the County (along with FDOT) submitted a new application (the subject of this litigation) and notice was published on November 28, 2011. (Doc. 1-20, p. 12)  The 2011 application reduced wetland impacts by 7.35-acres as compared to the 2000 Application. (Doc 1-20, p. 12).

## ARGUMENT

As discussed above, there are four elements that must be established before a TRO/PI will be granted by the Court. *Dimare Ruskin, Inc. v. Del Campo Fresh, Inc.,* No. 8:10-cv-1332-T-23AEP, 2010 WL 2465158, at *1 (M.D. Fla. June 15, 2010) (citing *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.,* 320 F.3d 1205, 1210 (11th Cir. 2003)). Plaintiffs have failed to establish any of the four requirements, and as such their Motion for TRO must be denied.  A request for a temporary restraining order is evaluated by the same factors that generally apply to a preliminary injunction. *See United States v. Metropolitan Dade County*, 815 F. Supp. 1475, 1477 (S.D. Fla. 1993); *see also* (Doc. 7, p. 4) (setting forth the elements a movant must show to obtain a temporary restraining order); M.D. Fla. L.R. 4.05(b)(4).

1.  Plaintiffs Fail to Demonstrate a Substantial Likelihood of Success on the Merits

The fist element necessary to secure a TRO/PI is to demonstrate a substantial likelihood of success on the merits.  If a movant fails to establish this factor, the court may deny a preliminary injunction without considering the other three factors. *Sheets v. City of Punta Gorda, Florida,* 219CV484FTM38MRM, 2019 WL 6251361 (M.D. Fla. Nov. 23, 2019); *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011). It is considered the most important factor in determining whether or not to grant a TRO/PI.

In its Motion for TRO, the Plaintiffs argue that they establish a substantial likelihood of success because they have presented evidence that the Defendants are likely violating the APA, NEPA, and the CWA. First, the Plaintiffs allege that the conduct in issuing the permit was arbitrary and capricious because the EA and FONSI are insufficient, and that the Corps should be required to prepare an EIS.  Second, the Plaintiffs allege the procedural mandates of NEPA and the CWA were not followed because the Corps failed to afford public participation in the development of the EA. Neither allegation is supported by the record.[1]

    a.  <u>The Corps' decision not to provide an EIS was not arbitrary and capricious.</u>

Under NEPA, an agency is required to provide an EIS only if it will be undertaking a "major federal action" which "significantly affects the quality of the human environment." 42 U.S.C. 4332(2)(c) *quoted in Dep't of Transp. v. Pub. Citizen,* 541 U.S. 752, 124 S. Ct. 2204 (2004). NEPA decisions are reviewed to determine whether this agency's action was arbitrary and capricious.  The Eleventh Circuit has found that the arbitrary and capricious is exceedingly deferential to a federal agency's decision whether to issue a FONSI or EIS. *See Sierra Club v. Van Antwerp*, 526 F.3d 1353,1362 (11th Cir. 2008).  To determine if the agency's decision not to prepare an EIS is "arbitrary and capricious," the court must ensure the agency: 1) identified the relevant environmental concern; 2) took a "hard look" at the problem when preparing the EA; and 3) if issuing a FONSI, made a convincing case for its finding. *Hill v. Boy,* 144 F. 3d 1146, 1450 (11th Cir. 1998) (*quoting Coalition on Sensible Transp. Inc. v. Dole,* 826 F. 2d 60, 66-67 (D.C. Cir. 1987)).

---

[1] Plaintiffs also make the naked assertions in their introduction that the Corps did not properly evaluate mitigation or project alternatives, (Doc. 2, p. 2), but then do not provide any arguments in support of those propositions.  The Corps discusses mitigation in the EA (Doc. 1-20, p. 225-231) and alternatives analysis (Doc. 1-20, p. 157-198).

The record in this case shows that the Corps issued the FONSI only after it extensively analyzed the environmental issues raised by the Project, including the direct, indirect, and cumulative impacts of the Permit and the Project. (*See*, Doc. 1-20). The EA and related documents, analyses, public comments and public comments show that the Corps met its responsibilities under NEPA and took a "hard look" at the environmental issues. *Vermont Yankee Nuclear Power Corp. v. NRDC*, 14 435 U.S. 519, 558 (1978); *see also D'Olive Bay Restoration & Pres. Comm., Inc.v. U.S. Army Corps of Eng'rs*, 513 F. Supp. 2d 1261, 1289 (S.D. Ala. 2007) (the Corps' findings were "rational and well-reasoned, the result of the required 'hard look'"). In light of the extensive record, it would be difficult for Plaintiffs to assert that the Corps failed to consider environmental issues, and indeed Plaintiffs do not. Rather, Plaintiffs attempt to back-door in an argument about the methodology used in an underlying document supporting the EA, the Biological Opinion ("BO") issued by the United States Fish and Wildlife Service ("FWS").

Throughout, the Motion for TRO, Plaintiffs raise concerns with the BO. However, despite numerous opportunities to challenge the sufficiency of the BO both prior to and following its issuance, the Plaintiffs have not challenged the BO in this action or at any time. They have not adequately plead a challenge to the BO in the Complaint, and inappropriately seek to attack it indirectly without joining the FWS, arguably a necessary and indispensable party as the party responsible for issuing the BO. Plaintiffs essentially ask the Court to issue a preliminary injunction on the mistaken belief that general guidance from the FWS in 2007 somehow required that wildlife surveys be no older than three years. (Doc. 1-9) However, the County coordinated with the FWS to determine the methodology used to conduct the wildlife surveys which formed the basis of the BO. (Doc. 1-20, p. 109). The Corps properly relied on the expertise of FWS. The Plaintiffs now ask this Court to impermissibly to substitute its judgment for that of a federal agency acting within

the scope of its subject-matter expertise. *See C.A.R.E. Now, Inc. v. FAA*, 844 F.2d 1569, 1573 (11th Cir. 1988). The record shows the Corps took the necessary "hard look" at the impacts and species issues to the extent required by NEPA, and justifiably relied on the BO issued by the FWS. (Doc. 1-14, p. 7). Moreover, Plaintiffs' indirect attack on underlying documents and methodology is not sufficient to support the requested relief.  For both reasons, Plaintiffs are unlikely to succeed on the merits of these NEPA claims and a TRO/PI should not be issued in this case.

      b.  <u>The Corps adequately provided for public participation prior to issuance of the Permit.</u>

Plaintiffs argue that the decision process was procedurally deficient because it failed to include public comments on a previous application (which was withdrawn) and did not hold a public meeting on the project. When issuing EAs, agencies are required only to involve the public "to the extent practicable" and in accordance with 40 C.F.R. § 1506.6. *See* 40 C.F.R. §§ 1501.4(b), 1501.4(e)(1). Section 1501.4(b)'s "to the extent practicable" language affords agencies discretion in deciding how they involve the public. *See Brodsky v. U.S. Nuclear Regulatory Comm'n*, 704 F.3d 113, 121 (2d Cir. 2013).  The applicable regulations "provide the Corps discretion to hold hearings on permit applications on an 'as needed' basis. 33 C.F.R. § 327.4. If the Corps determines that it has the information necessary to reach a decision and that there is 'no valid interest to be served by a hearing,' the Corps has the discretion not to hold one. *Id.* § 327.4(b)." *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 545 (11th Cir. 1996).

      Pasco and FDOT submitted the application for the Permit on May 31, 2011.  (Doc 1-20, p. 12). The Corps published the required public notice on November 28, 2011. (Doc. 1-20, p. 12). In response to the notice, "the Corps received numerous comments from federal and state agencies, tribes, non-governmental organizations, and individual members of the public." (Doc. 1-20, p. 14; *see also* Doc. 1-20, p. 49-157 and Attachment 1 Comment Matrix). The Corps issued additional

public notices on September 25, 2018, regarding modifications to the applications, which modifications resulted in a 16.54 acre reduction in permanent impacts as a result of the Project. (Doc 1-20, pp. 14, 16). The Corps is not required to include in its decision documents, comments on a withdrawn application, even if the application was for a substantially similar project. Plaintiffs' Exhibit B further explains why Plaintiff's complaint that prior comments were not included is not reasonable.  In Paragraph 6 of Exhibit B of the Motion for TRO, Plaintiff Rametta declares "I *assumed* that all public comments after 2000 that was [sic] relevant to the unchanged data would be considered in any final decision." (Emphasis added.) And while Attachment 1 to Exhibit B of the Motion for TRO shows that Plaintiff Rametta asks the Corps multiple times whether comments on the withdrawn application would be included, it also shows that the Corps did not respond in writing to that particular question.  Corps review was more than adequate to satisfy the NEPA requirements. The Corps specifically considered whether to grant a public hearing and determined that after thorough review of the 1,898 comments received that the substantial issues raised were fully considered and are in fact addressed in the Environmental Assessment. (Doc. 1-20, p. 49) (Comment Matrix).Therefore, Plaintiffs are unlikely to prevail on the basis of comments on a prior application that were not included.

Similarly, Plaintiffs allegations that failure to hold a public meeting or hearing is grounds for issuance of the TRO/PI must fail, because it is clear even from the Motion for TRO that the Corps considered the issue of a public hearing, determined that it had adequately considered the substantial issues raised by public comment, and made all information being addressed in the decision document available in multiple forms online.  (Doc. 1-20, p. 48; *see also* Doc. 2, pp. 14-15).

2.  <u>Plaintiffs Fail to Demonstrate an Irreparable Injury in the Absence of the Requested Injunction</u>

"A showing of irreparable harm is 'the sine qua non of injunctive relief'" and must be "neither remote nor speculative, but actual and imminent." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (citations omitted). Absent a showing of irreparable harm, no injunction may be issued. *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am.*, 896 F.2d at 1285. In this case, Plaintiffs fail to demonstrate an irreparable injury in the absence of the requested TRO/PI.

Plaintiffs' Motion for TRO (Doc. 2) and Complaint (Doc. 1) indicate that Plaintiffs have been aware of and actively participating in the RRE project process for over 20 years.  (Doc. 1, p. 7, 9). Plaintiffs attach exhibits showing direct communication with Corps personnel multiple times about the Project. (Doc. 2-2, Attachment 1). The Permit was granted December 20, 2019, yet Plaintiffs waited to file their Motion for TRO until after Pasco "ha[d] already held a groundbreaking ceremony to begin construction, is excavating burrows and removing Gopher Tortoises, clearing trees and ponds within the wetlands and encroaching inter Serenova Preserve, has limerock on standby for laying down curb for imminent construction of the Ridge Road Extension, and … is estimated to be within thirty-six (36) hours" of commencing construction. (Doc. 2, p. 3; *see also* Doc. 2, p. 17).  The "emergency" circumstances Plaintiffs use to justify their request for a TRO/PI could have been less urgent had Plaintiffs acted in a timely manner.   The failure to timely request injunctive relief establishes a lack of immediate injury absent injunctive relief. *Palm Beach County Envtl. Coal. v. Florida*, 587 F. Supp. 2d 1254,1257 (S.D. Fla. 2008) (environmental coalition did not show there was an actual emergency at hand and therefore was unlikely to suffer irreparable and immediate injury absent a preliminary injunction).

Regarding the substance of the Motion for TRO, Plaintiffs allege procedural harm, asserting that "failure to grant a TRO/PI will mean that the public's legal rights under NEPA and the CWA … will be lost forever, even if the Court does ultimately rule in favor of Plaintiffs." (Doc. 2, pp. 3-4). Under this proposed standard, every case alleging a NEPA or CWA procedural violation would require an almost automatic entry of a TRO/PI. The generic allegations of NEPA and CWA violations are wholly unremarkable and insufficient to meet the high burden required to justify the "extraordinary and drastic remedy" of a TRO/PI, especially on a well-publicized project that has been decades in the making and has already commenced construction. *See Four Seasons Hotels,* 320 F.3d. at 1210.

Plaintiffs also fear a number of impacts caused by the recently-started construction activities, including impacts to the Eastern Indigo Snake and the Gopher Tortoise. Plaintiffs concerns with construction impacts to species will not be alleviated by a TRO/PI. All Gopher Tortoises have already been relocated (*See* Pilla Affidavit, ¶ 10, attached hereto as **Exhibit A**); therefore, entry of a TRO/PI will have no effect on any construction-related impacts to the Gopher Tortoise. Similarly, Plaintiffs raise concerns about construction impacts to the Eastern Indigo Snake; no Eastern Indigo Snakes were found during the Gopher Tortoise relocation and none have been found as construction has commenced. (Exhibit A, ¶ 9) Any that are located will be handled as required by the USFWS Standard Protection Measures for the Eastern Indigo snake pursuant to the RRE Permit. (Doc. 1-1, p. 6).

Plaintiffs allege that the destruction of the wetlands is irreparable because it cannot be compensated for monetarily, but Plaintiff's assertion that all impacts to wetlands are irreparable is not supported by law. The CWA and the Permit specifically allow impacts to wetlands based on the understanding that such impacts can be mitigated. (*See* Permit Condition 11, Doc. 1-1, p. 7;

*see also* (Doc. 1-20, p. 225-231). In the event the court were to find the mitigation inadequate, the court could simply require the applicants to provide additional mitigation.  Impact to wetlands does not inevitably lead to the conclusion that the injury is irreparable; and where Plaintiffs allege only that the wetland impacts are "irreparable,"[2] they have not met the high burden required to justify a TRO/PI.[3]

The other impacts alleged by Plaintiffs are impacts caused by a fully built out project and are not appropriate to enjoin with an early-stage TRO/PI.  For example, Plaintiffs state that the completed project "will almost certain encourage more explosive growth and greatly increased traffic," which is a harm that will not manifest until long after the project is complete. Later, Plaintiffs list vehicular noise, emissions, fumes, leaking oil, fluid into ditches, and inevitable pollution as the justification for issuance of the TRO/PI, (Doc. 2, p. 18), but again, none of those harms come into existence until the RRE is done.  Additionally, the Plaintiffs completely ignore the well-reasoned Corps analysis that residential and commercial development in the area will occur whether or not the RRE is constructed. (Doc. 1-20, p. 223).  Similarly, the Motion for TRO states that the Sierra Club members fear construction of the RRE will "degrade" the Sierra Club's members' "use of existing trails *in the future*," (Doc. 2, p. 7) or again that the project will "degrade the quality" of the experience of visiting the Serenova Preserve "*in the future* by noise pollution, habitat loss, and reduction in public recreational lands."[4] (Doc. 2, p. 18 (emphasis added)).  This type of future harm could be remedied upon a final court order and is not an appropriate

---

[2] Note that 5.03 acres of wetlands will only be "temporarily impacted." (Doc. 1-1, p. 1)
[3] Plaintiffs assert, through the Declaration of Reed F. Noss, Ph.D., that "the decision documents do not [sic] the issuance of the permit," that "the decisional documents fail to provide adequate analysis of the project impact" on wetlands.  These assertions are legal in nature and outside the purview of factual testimony.
[4] The project will contain a multi-use trail that will connect to existing multi-use trails for recreational purposes. (Doc. 1-20, p. 3-4).

justification for the immediate remedy of a TRO/PI. S*ee Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008).

In short, the Plaintiffs have failed to show the requisite imminent harm necessary for the Court to grant the preliminary injunctive relief requested. As such, the Plaintiffs Motion for TRO must be denied.

3. <u>Plaintiffs Fail to Demonstrate a Threatened Injury that Exceeds Any Injury to the Non-Moving Party Caused by the Injunction</u>

Plaintiffs declare that Defendants will "not suffer any harm" from by entry of a TRO/PI. (Doc. 2, p. 15). This argument ignores both the reality of construction projects and the important public purposes the project was designed to address. Pasco will suffer harm in the form of monetary damages in the amount of $90,000 in fixed costs for the delay, in addition to an estimated $41,408.75 per day. (*See* Wert Affidavit, attached as **Exhibit B**, ¶ 10).  Additionally, "Pasco County purchased non-refundable wetland mitigation credits at a cost of $5,317,650… to mitigate for wetland impacts." (Exhibit B, ¶ 11).. But it is the dual purposes of the RRE project – mobility, and more significantly, improved emergency evacuation routes – that speak to the weight of the injury Pasco will suffer if the Project is delayed for an indeterminate amount of time while the case is pending.  The RRE is estimated to reduce hurricane evacuation from 23.4 hours to 16.6 hours based on the Hurricane Evacuation Assessment. (Doc. 1-20, p. 175).  The Addendum to Alternative Analysis submitted by Pasco estimates a savings of $42.9 million dollars annually, to the general public, due to the increased mobility provided by the RRE. (Doc. 1-19, p. 48).  This delay in providing effective mobility and safety to its citizens is a public harm that Pasco, on behalf of its residents, would incur if the Court were to issue a TRO/PI in this case.

4. <u>Public Policy Favors Denying Plaintiffs' Request for a Temporary Restraining Order</u>

For the reasons described above, public policy favors denying Plaintiffs' request to issue a TRO/PI.  Plaintiffs assert, with very little detail, that benefit of environmental preservation outweighs any economic harm to Defendants.  Again, this argument ignores the purposes of the RRE Project, which are to improve mobility, and to provide needed emergency evacuation routes. (Doc. 1-13, p. 2).

5. <u>Plaintiffs Should be Required to Post a Bond if a Temporary Restraining Order Issues</u>

Pursuant to Federal Rule of Civil Procedure 65 (c), Pasco requests that if this Court grants Plaintiffs' Motion for TRO it should require Plaintiffs to post a bond sufficient to ensure the payment of the extensive costs and damage that will be incurred by Pasco. As noted herein, Pasco is incurring, and will continue to incur, significant damages if a preliminary injunction is issued, $5,317,650 for non-refundable wetland mitigation credits, approximately $90,000 in fixed costs, plus <u>$1,242,262.50</u> per month in damages. (Exhibit B, ¶ 10, 11).

Rule 65(c) calls upon the court to fix a bond amount in what it considers to be the amount necessary to pay the costs and damages sustained by parties found to have been wrongfully enjoined. *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs,* 297 F.R.D. 633 (N.D. Alabama, 2014). Because a temporary injunction constitutes extraordinary relief, Rule 65(c) of the Federal Rules of Civil Procedure requires the moving party to post a bond in order to ensure that it will be able to pay all or at least some damages if it turns out the preliminary injunction was wrongfully issued. *Piambino v. Bailey,* 757 F.2d 1112, 1143 (11th Cir. 1985). In determining the amount of that bond, the Court should consider, among other things, that: (1) construction on RRE has already begun and every day that contractors do not work costs escalate, and further delay

could potentially cause termination of construction contracts; (2) Pasco has proceeded with the siting and design of RRE in an open and transparent manner, with construction activities are ongoing; and (3) Pasco has proceeded with construction of RRE under the authority of the RRE Permit. "As required by Rule 65(c), the Court may not impose a preliminary injunction without considering what amount would be proper to pay costs and damages sustained by the party found to have been wrongfully enjoined or restrained.  The amount of an injunction bond is a matter within the sound discretion of the district court." *Telestrata, LLC v. NetTALK.com, Inc.,* 126 F. Supp. 3d 1344, 1356 (S.D. Fla. 2015) (citing *See Carillon Importers, Ltd. v. Frank Pesce Int'l Group, Ltd.*, 112 F.3d 1125, 1127 (11th Cir. 1997).

Recognizing the damages that could be incurred on a monthly basis, Pasco suggests that a bond of $5,000,000 is appropriate.  Pasco reserves the right to request an increase in the amount of the bond should it be determined that this is insufficient.

<u>CONCLUSION</u>

For the reasons expressed herein, Plaintiffs have failed to meet their extraordinary burden and have not demonstrated that they are likely to win on the merits.  The NEPA, APA, and CWA claims brought by Plaintiffs are belied by the record before the Court, which shows that the Corps met its responsibilities to analyze environmental impacts associated with the Permit and met the procedural requirements for public participation.  Plaintiffs' self-created emergency is insufficient to justify the issuance of a temporary restraining order or preliminary injunction, particularly because Plaintiffs have not and cannot show they will be irreparably harmed.  Plaintiffs have been aware of and involved with the RRE project for nearly two decades, but chose not to file suit until immediately before construction commenced.  The public interest is best served by allowing this Project to move forward, and Plaintiffs have not demonstrated that the harm they fear outweighs

the potential harm to the public if the project is delayed.  In short, Plaintiffs have not carried the extraordinary burden required to justify the entry of a temporary restraining order or preliminary injunction.

WHEREFORE, the Pasco Board of County Commissioners respectfully requests that this Court deny Plaintiff's Motion for TRO.

Dated:  February 13, 2020

Respectfully submitted,

/s/ Frederick L. Aschauer, Jr.
FREDERICK L. ASCHAUER, JR.
TRIAL COUNSEL
Bar No. FL0022
faschauer@llw-law.com
jmelchior@llw-law.com
Lewis, Longman & Walker, P.A.
315 South Calhoun Street, Suite 830
Tallahassee, FL  32301
Telephone: (850) 222-5702
Facsimile:  (850) 224-9242

and

NICOLE J. POOT
Florida Bar No. 0118858
LEWIS LONGMAN & WALKER, P.A.
Primary Email:  npoot@llw-law.com
Secondary Email:  jbissette@llw-law.com
                         jdavy@llw-law.com
100 Second Avenue S., Suite 501-S
St. Petersburg, FL  33701
Telephone:  (727) 245-0820
Facsimile:  (727) 290-4057

Case No.: 8:20-cv-287-T-36JSS

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 13, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notice of such filing to all counsel of record.

/s/ Frederick L. Aschauer, Jr.
FREDERICK L. ASCHAUER, JR.